# UNITED STATES DISTRICT COURT
# DISTRICT OF IDAHO

| | |
|---|---|
| JACK D. WRIGHT,<br><br>    Plaintiff,<br><br>vs.<br><br>BASIC AMERICAN FOODS,<br><br>    Defendant. | Case No.: 4:13-cv-00125-REB<br><br>**MEMORANDUM DECISION AND ORDER RE: DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>**(Docket No. 13)** |

Currently pending before the Court is Defendant's Motion for Summary Judgment (Docket No. 13). Having carefully considered the record, participated in oral argument, and otherwise being fully advised, the Court enters the following Memorandum Decision and Order:

## I. BACKGROUND

1. Plaintiff Jack D. Wright ("Wright") worked for Defendant Basic American Foods ("Basic") from 1967 to August 1995. *See* Def.'s Stmt. of Undisp. Facts, p. 1 (Docket No. 14). Pursuant to Basic's Pension Plan in effect at the time his employment ended (the "Plan") and applicable amendments thereto, Wright began receiving monthly pension benefits in September, 1995. *See id.*

2. The Plan is administered by a Pension Plan Administrative Committee (the "Committee") which is vested with "full discretionary authority to administer and interpret the

**MEMORANDUM DECISION AND ORDER - 1**

Plan." *See id*. at p. 2. The Plan's section 16.02 details the Committee's authority and reads in relevant part:

> *16.02 <u>Power and Duties of Committee</u>. The Committee shall have full discretionary authority to administer and interpret the Plan, including discretionary authority to determine eligibility for participation and benefits under the Plan. The Committee may, however, delegate such discretionary authority and such duties and responsibilities as it deems appropriate to facilitate the day-to-day administration of the Plan. Any determination by the Committee or the Committee's delegate shall be final and conclusive upon all persons.*

*See* Ex. B to Brown Aff. (Docket No. 16, Att. 2) (italics added).

3. The Plan's Article VIII governs the amount of retirement benefits. *See* Def.'s Stmt. of Undisp. Facts, p. 2 (Docket No. 14). The Plan's section 8.01(b) addresses, in part, the calculation of pension benefits for Wright and reads in full:

> *(b) <u>Calculation</u>. The Normal Retirement Benefit shall be a monthly amount equal to $12 or a fraction thereof, for each Year of Service Benefit Credit, or fraction thereof, calculated as though it were payable as a straight life annuity. Effective June 1, 1990, $14 shall be substituted for $12 in the preceding sentence. With respect to service before one or more one-year Breaks in Service, a vested Participant who terminates employment and later applies for retirement benefits shall have those benefits calculated on the basis of the Service Benefit Credit value and the method of calculating benefits, in effect on the date of his or her termination of employment.*

*See* Ex. B to Brown Aff. (Docket No. 16, Att. 2) (italics added).

4. In December 1993, Basic and the employees' union adopted Amendment No. 1 to the Plan (the "Amendment"), which added a new section 8.04 to Article VIII. *See* Def.'s Stmt. of Undisp. Facts, p. 2 (Docket No. 14). The Plan' new section 8.04 also addresses the calculation of Wright's pension benefit and reads in full:

> *Effective June 1, 1993, Article VIII is amended by adding the following section 8.04:*
>
> > <u>Calculation Effective June 1, 1993</u>.
> >
> > (a)   <u>Substitution of $17</u>. *Effective June 1, 1993, $17 is substituted for $14 each place it appears in this Article.*

**MEMORANDUM DECISION AND ORDER - 2**

> (b) <u>Greater of $17 or 1% of Benefit Compensation</u>. *Effective for each Year of Service Benefit Credit, or fraction thereof, earned after May 31, 1993, Normal, Early, and Late Retirement Benefit calculations described in this Article will be performed by crediting a Participant with the greater of the following:*
>
> > *(1) $17 per month, or a fraction thereof, or*
> >
> > *(2) 1% of the Participant's Benefit Compensation in a Plan Year after May 31, 1993.*

*See* Ex. B to Brown Aff. (Docket No. 16, Att. 2) (italics added).[1]

5. For purposes of calculating Wright's retirement benefits, the parties agree that he is entitled to 29.3 years of Service Benefit Credit. The parties also agree that Wright's highest compensation while employed with Basic was $25,019.36, for the 1995 year. *See* Def.'s Stmt. of Undisp. Facts, p. 3 (Docket No. 14). Through June 2011, Wright received a monthly pension benefit of $505.67, which was subsequently corrected to $506.43 per month. (That correction is not material to Wright's claim here.) *See id*. at pp. 3-4.

6. From July 2011 to July 2012, Wright (at times on his own and other times, though his then-attorney Jeffrey L. Thomason) corresponded with Basic concerning the proper amount of his pension benefits, arguing via several different means of calculation that his actual pension benefits were more than $506.43 per month. Each time, Basic rejected Wright's arguments. *See id*. at pp. 4-9.[2]

---

[1] A "Plan Year" is defined by the Plan as "the twelve consecutive month period beginning June 1 and ending on the following May 31." *See* Ex. B to Brown Aff. (Docket No. 16, Att. 2).

[2] Basic contends that these theories do not align with the theory subsequently offered in Wright's actual Complaint (discussed *infra*) such that the claim/calculations contained in his Complaint were never presented to the Committee for administrative determination and, thus, should be dismissed for failure to exhaust administrative remedies. *See* Def.'s Mem. in Supp. of MSJ, pp. 10-11 (Docket No. 15). The Court need not reach Basic's argument in this respect.

**MEMORANDUM DECISION AND ORDER - 3**

7. On February 21, 2013, Wright (now representing himself) initiated this action by filing a Complaint in state court (Basic removed it to this Court) captioned: "Suit for Request for Backpay, with Interest, and Cost." *See* Compl. (Docket No. 1, Att. 2). Therein, Wright calculates his pension benefits (using the Plan and the Amendment) as the greater of either:

- $17 per month multiplied by 29.3 years of service – $489.10 per month; or

- $24,522.04 (his compensation from June 1, 1993 to May 31, 1994) multiplied by .01 multiplied by 29.3 years of service – $7,184.95 per month; or

- $25,019.32 (his compensation from June 1, 1994 to May 31, 1995) multiplied by .01 multiplied by 29.3 years of service – $7,330.57 per month; or

- $7,364.05 (his compensation from May 31, 1995 to August 16, 1995) multiplied by .01 multiplied by 29.3 years of service – $2,157.66 per month.

*See id*. at pp. 4-5. According to Wright, because $7,330.57 per month "is the greater one, it should be used to complete the calculations of my Benefit." *See id*. at p. 5. Therefore, Wright seeks (1) the difference between $7,330.57 and $506.43 ($6,824.14) multiplied by 206 payments (the approximate number of monthly payments he has received up to the time he filed his Complaint) ($1,405,772.84); (2) interest; (3) an adjustment in monthly pension benefits from $506.43 to $7,330.57 moving forward; and (4) court costs. *See id*.

8. On November 11, 2013, Basic filed its Motion for Summary Judgment, arguing that Wright's claim is governed exclusively by the Employment Retirement Income Security Act of 1974 ("ERISA") and, accordingly, the Committee did not abuse its discretion in determining Wright's pension benefits. *See* Def.'s Mem. in Supp. of MSJ (Docket No. 15).

**MEMORANDUM DECISION AND ORDER - 4**

## II. DISCUSSION

### A. Summary Judgment Standard

One principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims . . . ." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). It is "not a disfavored procedural shortcut," but is instead the "principal tool [ ] by which factually insufficient claims or defenses [can] be isolated and prevented from going to trial with the attendant unwarranted consumption of public and private resources." *Id*. at 327. "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

The evidence, including all reasonable inferences which may be drawn therefrom, must be viewed in a light most favorable to the non-moving party and the Court must not make credibility findings. *See id*. at 255. Direct testimony of the non-movant must be believed, however implausible. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1159 (9th Cir. 1999). On the other hand, the Court is not required to adopt unreasonable inferences from circumstantial evidence. *McLaughlin v. Liu*, 849 F.2d 1205, 1208 (9th Cir. 1988).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001). To carry this burden, the moving party need not introduce any affirmative evidence (such as affidavits or deposition excerpts) but may simply point out the absence of evidence to support the nonmoving party's case. *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000).

**MEMORANDUM DECISION AND ORDER - 5**

This shifts the burden to the non-moving party to produce evidence sufficient to support a jury verdict in his favor. *See id*. at 256-57. The non-moving party must go beyond the pleadings and show "by [his] affidavits, or by the depositions, answers to interrogatories, or admissions on file" that a genuine issue of material fact exists. *Celotex*, 477 U.S. at 324.

However, the Court is "not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir. 1988)). Instead, the "party opposing summary judgment must direct [the Court's] attention to specific triable facts." *Southern California Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n. 3 (9th Cir. 1995).

**B.      The Committee Did Not Abuse Its Discretion In Deciding That Wright Was Not Entitled to Additional Pension Benefits Under the Plan**

Although Wright's Complaint does not assert a specific cause of action *per se*, it obviously seeks to recover benefits he believes are due to him and remain unpaid under the terms of the Plan and the Amendment. In this respect, then, the claim or claims in Wright's Complaint are governed by federal law, *i.e.* ERISA. *See* 29 U.S.C. § 1132(a)(1)(B). "In actions challenging denials of benefits pursuant to 29 U.S.C. § 1132(a)(1)(B), the district court reviews *de novo* 'unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan.'" *Cady v. Hartford Life & Accidental Ins. Co.*, 930 F. Supp. 2d 1216, 1223 (D. Idaho 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). "If the plan unambiguously confers

**MEMORANDUM DECISION AND ORDER - 6**

discretionary authority, then the standard of review shifts to abuse of discretion." *Cady*, 930 F. Supp. 2d at 1223 (citing *Firestone*, 489 U.S. at 115; *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999)).

The Plan provides that "[t]he Committee shall have full discretionary authority to administer and interpret the Plan, including discretionary authority to determine eligibility for participation and benefits under the Plan" and that "[a]ny determination by the Committee or the Committee's delegate shall be final and conclusive upon all persons." Ex. B to Brown Aff. (Docket No. 16, Att. 2). The Supreme Court has counseled that a plan grants discretion if the administrator has the "power to construe disputed or doubtful terms" in the plan. *See Firestone*, 489 U.S. at 115 (noting that if plan grants administrator right to determine eligibility for benefits or to "construe the terms of the plan," it has discretionary authority). Moreover, the Ninth Circuit has repeatedly held that plan wording which, as with the language at issue here, grants the power to interpret plan terms and to make final benefits determinations necessarily confers discretion on the plan administrator. *See Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006) (citing *Bergt v. Ret. Plan for Pilots Employed by MarkAir, Inc.*, 293 F.3d 1139, 1142 (9th Cir. 2002); *Grosz-Salomon v. Paul revere Life Ins. Co.*, 237 F.3d 1154, 1159 (9th Cir. 2001)). The Plan bestows on the Committee full discretion and authority to both interpret all terms and provisions of the plan and to determine eligibility for benefits. Under Ninth Circuit and Supreme Court precedent, the Plan clearly vests discretion in the Committee.

Because the Plan unambiguously confers discretion upon the Committee, the Court reviews the Committee's decisions *vis à vis* Mr. Wright under the deferential abuse of discretion standard of review. Under that standard, an ERISA administrator abuses its discretion only if it:

"(1) renders a decision without explanation; (2) construes provisions of the plan in a way that conflicts with the plain language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bell*, 410 F.3d 1173, 1178 (9th Cir. 2005). A plan administrator's decision "must be upheld under the abuse of discretion standard if it is based upon a reasonable interpretation of the plan's terms and if it was made in good faith." *McDaniel v. Chevron Corp.*, 203 F.3d 1099, 113 (9th Cir. 2000). Significantly, the question is not "whose interpretation of the plan documents is most persuasive, but whether the . . . interpretation is unreasonable." *Canseco v. Const. Laborers Pension Trust*, 93 F.3d 600, 609 (9th Cir. 1996) (citation and internal quotation omitted). In short, the reviewing court must look to the plain language of the plan to determine whether the administrator's interpretation of the plan is "arbitrary and capricious." *Id*. Here, the Committee did not abuse its discretion in determining that Wright was not entitled to additional pension benefits under the Plan. An examination of the pension benefits Wright actually received, cross-referenced against what the Plan and the Amendment allow, makes this patently apparent, as further described to follow.

To begin, subsection (a) of the new section 8.04 to Article VIII of the Plan replaced the $14 figure referenced in the second sentence of section 8.01(b) with $17 (which, by its own terms, in turn replaced the $12 figure referenced in the first sentence of section 8.01(b)), resulting in the "Normal Retirement Benefit" equaling $17 for each "Year of Service Benefit Credit" (as that term is defined in section 7.01 of the Plan). *See* Ex. B to Brown Aff. (Docket No. 16, Att. 2). In turn, subsection (b) of the new section 8.04 to Article VIII of the Plan provided for a different calculation of the benefit for each Year of Service Benefit Credit (the greater of either $17 per month or 1% of Wright's yearly compensation) – but only "earned *after*

**MEMORANDUM DECISION AND ORDER - 8**

May 31, 1993." *See id.* (Emphasis added). In other words, considering Wright's service from 1967 (when he began working for Basic) through 1993 (when his employment with Basic ended), the Plan and the Amendment could reasonably be interpreted to provide Wright with a monthly pension benefit of (1) $459.00 ($17 for each of Wright's 27 "Year[s] of Service Benefit Credit" during this time). In 1994, Wright's compensation was $24,522.04; therefore, for this year, the Plan and the Amendment likewise could reasonably be interpreted to provide Wright with a monthly pension benefit of (2) $20.44 (1% of Wright's 1994 compensation divided by 12 months). From January 1, 1995 to May 31, 1995, Wright's compensation was $25,019.36; therefore, for this time, the Plan and the Amendment likewise could reasonably be interpreted to provide Wright with a monthly pension benefit of (3) $20.85 (1% of Wright's compensation during this time divided by 12 months). From June 1, 1995 to August 16, 1995, Wright's compensation was $7,364.05; therefore, for this time, the Plan and the Amendment likewise could reasonably be interpreted to provide Wright with a monthly pension benefit of (4) $6.14 (1% of Wright's compensation during this time divided by 12 months). In tabular format, these calculations are:

| Period | Benefit | Calculation |
|--------|---------|-------------|
| 1967 | $17.00 | $17 x 1 |
| 1968 | $17.00 | $17 x 1 |
| 1969 | $17.00 | $17 x 1 |
| 1970 | $17.00 | $17 x 1 |
| 1971 | $17.00 | $17 x 1 |
| 1972 | $17.00 | $17 x 1 |
| 1973 | $17.00 | $17 x 1 |
| 1974 | $17.00 | $17 x 1 |

| | | |
|---|---|---|
| 1975 | $17.00 | $17 x 1 |
| 1976 | $17.00 | $17 x 1 |
| 1977 | $17.00 | $17 x 1 |
| 1978 | $17.00 | $17 x 1 |
| 1979 | $17.00 | $17 x 1 |
| 1980 | $17.00 | $17 x 1 |
| 1981 | $17.00 | $17 x 1 |
| 1982 | $17.00 | $17 x 1 |
| 1983 | $17.00 | $17 x 1 |
| 1984 | $17.00 | $17 x 1 |
| 1985 | $17.00 | $17 x 1 |
| 1986 | $17.00 | $17 x 1 |
| 1987 | $17.00 | $17 x 1 |
| 1988 | $17.00 | $17 x 1 |
| 1989 | $17.00 | $17 x 1 |
| 1990 | $17.00 | $17 x 1 |
| 1991 | $17.00 | $17 x 1 |
| 1992 | $17.00 | $17 x 1 |
| 1993 | $17.00 | $17 x 1 |
| 1994 | $20.44 | ($24,522.04 x .01) / 12 |
| 1/1/95-5/31/95 | $20.85 | ($25,019.36 x .01) / 12 |
| 6/1/95-8/16/95 | $6.14 | ($7,364.05 x .01) / 12 |
| **TOTAL** | **$506.43** | |

The point here is not to critique Wright's own calculation of his monthly pension benefits (though there is room to do so[3]); rather, it is to highlight the Committee's reasoned approach toward calculating Wright's pension benefits according to the Plan and the Amendment. That

---

[3] For example, Wright's calculations neither (1) limit the "greater of" formula only to his post-May 31, 1993 employment, nor (2) properly apply the "greater of formula" by dividing 1% of his compensation by 12.

**MEMORANDUM DECISION AND ORDER - 10**

alternate formulae may exist that would calculate different pension benefit amounts (even if attributed, perhaps, to perceived discrepancies or ambiguities in the Plan and the Amendment) is immaterial. The Committee's conduct and decisions as to Mr. Wright's pension amounts are supported by a good faith, reasonable interpretation of the Plan and the Amendment, and it cannot be said that the Committee abused its discretion in making such decisions. Accordingly, Basic's Motion for Summary Judgment is granted.

### III.  ORDER

Based on the foregoing, IT IS HEREBY ORDERED that Basic's Motion for Summary Judgment (Docket No. 13) is GRANTED.



DATED: **May 20, 2014**

Honorable Ronald E. Bush
U. S. Magistrate Judge